IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CAMILLE SMITH,

    Plaintiff,

vs.                                            CASE NO.: 1:04cv106-SPM/AK

BOARD OF TRUSTEES OF
THE UNIVERSITY OF FLORIDA,

    Defendant.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on the motion for summary judgment (doc. 39) filed by Defendant Board of Trustees of the University of Florida (the "University").  The parties have had the opportunity to fully brief the issues and to submit materials in accordance with Northern District of Florida Local Rules 56 and 7.1.  For the reasons explained below, the Court finds that genuine issues of material fact exist for a jury to determine in this case.  Accordingly, the motion for summary judgment will be denied.

**I.    BACKGROUND**[1]

Plaintiff Camille Smith ("Dr. Smith") is a tenured associate professor of

---

[1] The facts are presented, as they must be, in the light most favorable to the plaintiff.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

music education at the School of Music, College of Fine Arts, University of Florida.  Dr. Smith began teaching at the University in 1982.  In 1988, the University approved Dr. Smith for tenure and promoted her to associate professor.

When Dr. Smith applied for a promotion to full professor in 1997 and 2001, however,  the University denied her the promotion.  Dr. Smith contends that she was denied the promotion because she is a woman.  She also contends that she has been denied favorable teaching assignments and denied merit raises because she is a woman.  Since the filing of this suit, moreover, Dr. Smith alleges that the University has retaliated against her by requiring her to attend every graduate class taught by her teaching assistants.

The various colleges at the University are overseen by the Provost and the University President.  During the time period complained of by Dr. Smith, the College of Fine Arts was overseen by Dean Donald McGlothlin.  The various schools within the College of Fine Arts are run by Department Chairs.  Finally, Area Heads have organizational responsibilities for the various areas, such as music education, within the School of Music.  Dr. Smith believes that only Dr. Charles Hoffer, Dr. Russell Robinson, Dean McGlothlin, Department Chair Dr. Joel Stegall, and former Department Chair Dr. Giacomo Oliva discriminated against her.  She contends that their discriminatory decisions were adopted by higher officials at the University without any independent review.

## II.    STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue as to any material fact; and in deciding whether the movant has met this burden the court must view the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  One way for the moving party to meet the burden is by showing that the non-moving party lacks evidence to support an element of the non-moving party's case.  Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996).

Once the burden is met, summary judgment cannot be avoided by the non-moving party by simply relying upon the allegations or denials in the pleadings.  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  Rather, to avoid summary judgment, the non-moving party must point to evidence in the record or additional evidence that could be "sufficient to withstand a directed verdict motion at trial."  Id. (citations omitted).

The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). In making the determination of whether the parties have met their respective burdens for summary judgment, no special standard applies. Chapman v. AI Transport, 229 F.3d 1012, 1025-26 (11th Cir. 2000). Instead, the same standard for summary judgment that applies to non-discrimination cases is used. Id.

### III.  McDONNELL DOUGLAS FRAMEWORK

Dr. Smith has no direct evidence that the University discriminated against her. To prove a prima facie case, she must therefore rely on the indirect method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, to prove that because of her sex she was denied a promotion to full professor, denied raises, and denied teaching assignments, Dr. Smith must show (1) that she is a member of a protected class–female, (2) that she was denied a job benefit tantamount to an adverse employment action, (3) that similarly situated males were treated more favorably, and (4) that she was qualified for the job benefit at issue. Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000).

If Dr. Smith meets this burden, then a legal presumption of discrimination arises and the burden shifts to the University to articulate a legitimate, non-discriminatory reason for its challenged actions. Chapman, 229 F.3d at 1024. Upon the proffer by the University of a legitimate, non-discriminatory reason, the

legal presumption of discrimination disappears and the burden shifts back to Dr. Smith.  See id.  Dr. Smith must then present evidence sufficient to show that there are genuine issues of material fact as to the truth or falsity of the University's proffered legitimate, non-discriminatory reasons and whether the University unlawfully discriminated against her.  See id. at 1025 n. 11.

## IV.     APPLICATION

The University's motion for summary judgment challenges Dr. Smith's claims on several grounds.  First, the University argues Dr. Smith cannot establish all the elements of a prima facie case.  In particular, the University contends that Dr. Smith was not qualified to be a full professor because she has not achieved distinction in the areas of teaching, research, or service to the University.  Next, the University argues that Dr. Smith has failed to identify any male professor who was equally or less qualified but nevertheless promoted to full professor, paid a larger salary, or received more favorable teaching assignments.  The University also argues that even if Dr. Smith can state a prima facie case, it had legitimate, non-discriminatory reasons for its actions.

### A.     Qualification for Position

With regard to Dr. Smith's qualifications, the record evidence in this case is sufficient to show that Dr. Smith was qualified to be a full professor.  "[W]here a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy the test of a prima facie case can be inferred."

Hinson, 231 F.3d at 828 n.9 (quoting Pace v. Southern Ry. Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983). Moreover, in an employment discrimination context, qualification for the position "refers to basic qualifications rather than optimal performance." Richey v. City of Lilburn, 127 F.Supp.2d 1250, 1258 (N.D. Ga. 1999).

As a tenured associate professor, Dr. Smith's job duties are not materially different from the duties of a full professor. See Bennun v. Rutgers State Univ., 941 F.2d 154, 169 (3d Cir. 1991). Moreover, her achievement in the required areas of teaching, scholarship, and service were deemed sufficient by three of the ten faculty members who voted on her candidacy to promote her to the rank of full professor. The record is sufficient to demonstrate Dr. Smith's qualifications for purposes of stating a prima facie case. Accordingly, summary judgment on this ground will be denied.

### B.   More Favorable Treatment of Male Faculty

In showing that the University treated male faculty members more favorably than it treated Dr. Smith, Dr. Smith should be compared with faculty members "who have very similar job-related characteristics and who are in a similar situation." McPhereson v. Univ. of Montevallo, 922 F.2d 766, 774 n.16 (11th Cir. 1991). She is not required to show that her qualifications are equal to or greater than the comparators as part of her prima facie case. See Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998).

An appropriate comparator is someone who shares the same type of job task. Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992). The standard is relatively relaxed. Id. at 1526 ("A plaintiff suing under the Equal pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay. . . . Under the disparate treatment approach of Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs . . . ."). The comparators Dr. Smith identifies perform duties similar to hers and occupy a similar status as professors of music.

With regard to these male music professors, Dr. Smith has sufficient evidence to show that the University treated males more favorably. In particular, the University declined to promote Dr. Smith to the rank of full professor in part because she had not published a book. She had, however, published nine refereed articles, among which two were published in the top research journals in the field.

In contrast, the University hired John Duff as Director of the School of Music in 2002 despite the fact that he had no publications. The University also promoted Dr. David Waybright to the rank of full professor, although his publications were lacking. Dean McGlothlin argued in support of Dr. Waybright's candidacy that band directors are not expected to publish. With respect to Dr. Smith, however, publication of a book was expected, and her other publications were discounted.

In the area of pay, Dr. Smith has produced sufficient evidence to show disparate treatment. Dr. Smith has been on the faculty of the School of Music for 22 years. She is, moreover, a leading researcher in music education and has significant publications. Dr. Smith achieved distinction as the founder of the Preparatory Strings Program, which provides small group instruction to public school children and offers three levels of orchestra in the Gainesville Public Schools. The University's string students gain valuable experience by serving as teaching assistants, teachers, and conductors. In a December 2000 report entitled "Distance, Continuing, and Executive Education" the University Provost described Dr. Smith's string program as something that should be strongly considered when tenure and promotion are being sought.

Despite her achievements, Dr. Smith's salary is the lowest of all the full-time faculty at the School of Music. Dr. Smith is paid less than the new hires, the assistant professors, the untenured, and the unpublished. The evidence is sufficient to establish a prima facie case of discrimination in the area of pay.

As for teaching assignments, Dr. Smith had complained that she has not been assigned to teach summer courses and graduate courses. The teaching of summer courses has been monopolized by Dr. Russell Robinson, who has taught summer courses every year since 1993. With regard to graduate teaching assignments, a new male hiree, Timothy Brophy, has been assigned to teach courses that Dr. Smith has been waiting years to teach.

In recommending against her tenure, Dr. Robinson criticized Dr. Smith for limiting her teaching to the area of string education. Ironically, Dr. Robinson, along with Dr. Charles Hoffer, was responsible for Dr. Smith's teaching assignments during the relevant period of time. There is sufficient evidence for Dr. Smith to make a prima facie case of discrimination with respect to teaching assignments.

### C. Legitimate Non-Discriminatory Reasons and Pretext

The University has come forward with legitimate non-discriminatory reasons for its treatment of Dr. Smith. The University contends that it appropriately denied Dr. Smith a promotion to the rank of full professor because she has not achieved a level of excellence in at least two of the following three areas: teaching, research, and service to the University. Dr. Smith has, however, met her burden in presenting evidence upon which a jury could find that the University's reason is untrue and that the University refused to promote Dr. Smith because she is a woman. For example, the University contends that based on Dr. Smith's student evaluations, Dr. Smith has not achieved excellence in the area of teaching. Dr. Smith's evaluations, however, compare favorably to those of male professors. Although the University deemed Dr. Smith's evaluations to be lower than the mean for the School of Music, a review of the actual scores shows that they were higher.

In the area of research, Dr. Smith has published numerous articles and

papers.  Dr. Smith's outside evaluators regarded her research as original and groundbreaking.  Her 1995 survey on string teacher training in American academia provided the baseline data for improving string teacher training.  In 1997, she published a research article on access to string education in public schools that served as a model and resource for later studies.  In 2000, Dr. Smith published another study, this time examining string programs in low socioeconomic school districts.  These research studies were not credited by the University in assessing Dr. Smith's achievement in the area of research.

Instead, the University notes that Dr. Smith has not completed a music education book.  The publication of a book, however, is not an express requirement for research excellence and others have been promoted to the rank of full professor without publishing a book.

With regard to service, the University fails to credit Dr. Smith for her string education program. The University explains that the program is focused at the public school level, instead of the university level, and should therefore not be counted.  The string program, however, is used to recruit new students for the Department of Music.  Even the University Provost stated that the string program was an important consideration for tenure and promotion.  Dean McGlothlin and Dr. Hoffer also concluded that Dr. Smith's service to the university met the standards for full professor.

Finally, with regard to pay and opportunities for career advancement, the

University has provided an explanation of why Dr. Smith's salary is lower than Dr. Robinson's, but it has not provided an explanation regarding other male music professors. There remains a genuine issue as to whether the University has discriminated against Dr. Smith with regard to pay.

On career advancement, the University notes that only one course is offered in music education each summer and that course is taught by the most qualified person. This explanation is belied by Dr. Robinson's letter dated January 25, 1993, in which he requests a minimum of one summer assignment each year because "[he has] a wife and two children to support (a rare economic case on our faculty) . . . ." Doc. 73-4, Bates 001751. As for graduate teaching assignments, the University relies on a letter written by Dr. Smith requesting that she not be assigned to teach graduate courses. No official at the University claims to have taken the note seriously or to even remember it, let alone to have relied upon it. Dr. Smith never stopped teaching or being assigned to teach some graduate courses, and she would have liked to teach more.

### V.   CONCLUSION

Dr. Smith has stated a prima facie case that the University discriminated against her on the basis of sex by denying her promotion to the rank of full professor, paying her a low salary, and refusing to assign her to teach summer and graduate courses. Although the University has proffered some legitimate non-discriminatory reasons for its challenged actions, Dr. Smith has sufficient

evidence upon which a jury could disbelieve those reasons and find that the University has discriminated against Dr. Smith on the basis of sex.  Accordingly, it is

ORDERED AND ADJUDGED that the University's motion for summary judgment (doc. 39) is denied.

DONE AND ORDERED this 27th day of May, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge